(C. D. 1810)

F. W. MYERS & CO., INC. v. UNITED STATES

United States Customs Court, First Division

(Decided October 4, 1956)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest was imported from Canada in five separate shipments and entered at the port of Malone, N. Y. Each importation was described on its invoice by language which identified the shipment as dressed crating lumber and was entered free of duty under the provision in paragraph 1803 (1) of the Tariff Act of 1930 for sawed lumber, not further manufactured than planed, and tongued and grooved, but subject to tax at the appropriate rate applicable to lumber under the Internal Revenue Code.

There does not seem to be any dispute that some of the pieces of wood contained in the shipments were made up of pieces which had been tongued and grooved and joined together with glue. The collector of customs held that such pieces were subject to duty as manufactures of wood, rather than as lumber, and, inasmuch as the importer failed to segregate the same from the remainder of each shipment, assessed duty on each shipment at the rate of 16⅔ per

centum ad valorem under the provision for manufactures of wood in paragraph 412 of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, by virtue of the commingled goods provision of the tariff act, section 508.

Although, as drawn, the protest contains a claim for free entry under paragraph 1803, *supra*, as lumber, that claim was not pressed at the trial, and, instead, reliance seems to have been chiefly placed upon an alternate claim for duty at the rate of 3¾ per centum ad valorem under the provision in paragraph 407 of the said act, as modified by the Presidential proclamation relating to the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, for "packing-box shooks, of wood, not specially provided for."

It is the contention of the Government, first, that the plaintiff is estopped from denying the correctness of the invoiced and entered descriptions of the merchandise. This is, in effect, a contention that the plaintiff should be prohibited from contending, under its protest, that the shipments consisted of packing-box shooks and not merely of lumber, as they were invoiced and entered.

In support of this contention, there are cited in the brief filed on behalf of the Government the cases of *Wakem & McLaughlin* v. *United States*, 5 Treas. Dec. 446, T. D. 23754, and *Spaulding & Co.* v. *United States*, 6 Treas. Dec. 37, T. D. 24152, involving instances where entry was made on papers known by the importers to be imperfect. In each of those cases, it was held that the importers were estopped from denying the correctness of the invoice on which the entry was made, inasmuch as the evidence showed that they had sworn to the best of their knowledge and belief that it was in all respects true when they had full knowledge that such was not the case.

The effect of the foregoing decisions, however, was very largely overcome by a later decision in the case of *Alex. Smith & Sons Carpet Company* v. *United States*, 6 Treas. Dec. 855, T. D. 24721, holding that statements made in entry papers are not conclusive so as to create an estoppel, merely because made under oath, but that such statements, especially when some degree of judgment is involved in their making, are subject to explanation. On appeal, this latter decision was affirmed in *United States* v. *Smith & Sons Carpet Co.*, 132 F. 1007. See also *Geo. Borgfeldt & Co.* v. *United States*, 11 Treas. Dec. 467, T. D. 27243, and *United States* v. *Alex Schechter Corp.*, 25 C. C. P. A. (Customs) 107, T. D. 49240, to the same effect.

See also *United States* v. *Wo Kee & Co.*, 21 C. C. P. A. (Customs) 341, T. D. 46880, wherein our appellate court said:

Invoice descriptions of imported merchandise in cases like the one at bar are admissions against interest and are presumptively correct. *When such admissions are contradicted by a protest, however, the importer is not precluded from disproving the correctness of such description.* [Italics added.]

See also the cases cited therein, *Lee & Co.* v. *United States*, 15 Ct. Cust. Appls. 202, T. D. 42236, and *United States* v. *Rockhill & Vietor et al.*, 10 Ct. Cust. Appls. 112, T. D. 38374.

From the foregoing, we are satisfied that the statements on the invoices and entries herein do not operate as an estoppel barring proof that the merchandise at bar actually consisted of something other than lumber.

The testimony offered by the plaintiff in support of the claim that the merchandise actually consisted of packing-box shooks was given by the president of the ultimate consignee, a firm engaged in the manufacture of wooden skids, palletes, tote boxes, and such products. The witness testified that he saw all of the merchandise as it was delivered at the plant of his company and that it came in bundles, each bundle consisting of 10 pieces of sides, 10 pieces of tops, 10 pieces of bottoms, and 20 pieces of ends, all cut to size, and being sufficient in number of pieces to make complete boxes, when assembled by nailing.

This evidence is not directly controverted, but defendant offered the testimony of a deputy collector at the port of entry, who stated that, in a conversation with one J. W. L. Funchion, whom he identified as the shipper of the merchandise involved, in respect of a shipment of merchandise other than those shipments here involved, but which conversation, he said, "reflected back" on these five shipments, Mr. Funchion volunteered the information that no ends had been shipped.

We are of the opinion that such evidence is too vague, remote, and unconnected with the matter at hand to overcome the clear and positive direct testimony offered by the plaintiff to the effect that the shipments consisted of sets of parts of boxes, including ends, in knocked-down condition.

In *Central Vermont Railway, Inc.* v. *United States*, 31 Cust. Ct. 160, C. D. 1563, it was held that a "shook" is a set of parts of boxes, ready to be put together by mere assembly or nailing, with nothing remaining to be done to the parts themselves. That description fits the merchandise at bar, and judgment will, therefore, issue sustaining that claim in the protest.